FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 25, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EMAN REYAD DYOKE,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:17-CV-00330-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Eman Reyad Dyoke, Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and for Title XVI Supplemental Security Income benefits (SSI) on August 20, 2013. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on January 14, 2016, before Administrative Law Judge (ALJ) R.J. Payne. Medical experts Margaret Moore, Ph.D., and Arthur Lorber, M.D., testified at that hearing. A supplemental hearing was held on May 3, 2016, at which Plaintiff testified, as did Vocational Expert (VE) Sharon Welter. On June 1, 2016, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has an 8th grade education and past relevant work experience as a retail store manager, sales clerk and payroll clerk. She alleges disability since July 1, 2014, on which date she was 46 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to find that Plaintiff had additional "severe" impairments; 2) rejecting the opinions of her treating physician, Bethany Lynn, M.D., and examining psychologist, John Arnold, Ph.D.; 3) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations; 4) failing to provide specific and germane reasons for rejecting a lay witness statement; and 5) failing to provide a hypothetical to the VE which included all of Plaintiff's physical and mental limitations.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments which include depression, anxiety/posttraumatic stress disorder, right knee degenerative joint disease, obesity, degenerative disk disease of the lumbar spine, and left shoulder bursitis and impingement syndrome;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform a range of light work, defined in 20 C.F.R. §§404.1567(b) and 416.967(b), which allows her to lift no more than 20 pounds at a time occasionally and lift or carry 10 pounds at a time frequently; allows her to sit with no limitations, stand for one hour at a time for a total of four hours in an eight hour workday, and walk for one hour at a time for a total of four hours in an eight hour workday; she can occasionally push/pull foot controls with the right lower extremity within the aforementioned weight limitations; she can occasionally push/pull objects and/or arm controls above shoulder level with the left upper extremity; she can frequently stoop and crouch; she cannot kneel with the right knee and cannot crawl; has minimal restriction on balancing; can frequently climb ramps and stairs, but cannot climb ladders, ropes or scaffolds; cannot work around unprotected heights or hazardous machinery; can occasionally reach overhead with the left upper extremity; can understand, remember and carry out simple and more complex work instructions; cannot work with the general public; can work with, or in the vicinity of, coworkers, but not in a teamwork type job setting; and would do best working independently;

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 5**

4) Plaintiff's RFC precludes performance of her past relevant work;

5) Plaintiff's RFC allows performance of other jobs existing in significant numbers in the national economy, including office helper and mail clerk.

Accordingly, the ALJ concluded Plaintiff is not disabled.

**SEVERE IMPAIRMENT**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine

clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*.

Plaintiff asserts the ALJ erred in failing to find that Plaintiff has additional "severe" impairments, including fibromyalgia, recurrent carpal tunnel syndrome, left foot plantar fasciitis, osteoporosis of the thoracic spine, gastroesophageal reflux disease (GERD), allergic rhinitis and lumbar radiculopathy. Citing testimony from Dr. Lorber at the hearing, the ALJ found that most of these are non-severe. (AR at pp. 26-27). Plaintiff contends that "in particular, the ALJ failed to properly account for numerous musculoskeletal impairments and associated symptoms . . . resulting in additional physical limitations . . ., the need for unscheduled breaks during the day to lie down, and preventing her from performing the exertional demands of light work." Plaintiff, however, does not identify these "additional physical limitations" and how they differ and/or are more severe than those arising from the physical impairments which the ALJ found severe: right knee degenerative joint disease, obesity, degenerative disk disease of the lumbar spine and left shoulder bursitis and impingement syndrome. Accordingly, if the ALJ erred in failing to find certain physical impairments as non-severe, the error his harmless. As discussed below, substantial evidence supports the ALJ's determination regarding the Plaintiff's physical RFC.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d).

Bethany Lynn, M.D., at Confluence Family Medicine, treated Plaintiff for physical impairments, although the length of that treating physician relationship is not apparent from the record. It is unclear how long Dr. Lynn treated the Plaintiff before the doctor, on August 7, 2014, completed a "Physical Functional Evaluation" for the Washington State Department of Social & Health Services (DSHS). Dr. Lynn noted Plaintiff was on Cymbalta for fibromyalgia which apparently had been diagnosed in 2011, and had carpal tunnel surgery on her right wrist in 2012, and on her left hand in 2013. (AR at p. 523). Dr. Lynn rated Plaintiff's carpal tunnel syndrome and fibromyalgia as "marked" impairments causing "[v]ery significant interference with

the ability to perform one or more basic work-related activities." (AR at p. 524). Dr. Lynn indicated Plaintiff was limited to "sedentary" work defined as the ability to lift 10 pounds maximum and frequently lift or carry lightweight articles, and the ability to walk or stand only for brief periods. (AR at p. 525). In the evaluation form, Dr. Lynn did not mention any objective findings supporting the physical limitations opined by her and instead stated that "[p]sychiatric diagnoses affect functioning, leaving house, memory, focus, communicating with others, making and keeping appointments." (AR at p. 524). The doctor noted that a "psychiatric consult" was pending and the treatment recommended by her was "counseling and psychiatric care." (AR at p. 525). Consistent therewith, in her progress notes from August 16, 2014, Dr. Lynn stated she thought Plaintiff's "anxiety and advanced depression are the most prohibitive to her ability to obtain and keep a job." (AR at p. 637). She added that Plaintiff's "carpal tunnel causes pain in wrists and weakness in hands that causes a moderate amount of difficulty in fine movements/computer work/ writing" and Plaintiff's fibromyalgia "causes pain in her back and hips and most of her body which affects prolonged standing or sitting and manual labor." (AR at p. 636).

In June of 2015, Dr. Lynn completed a one page "Medical Questionnaire" at the request of Plaintiff's counsel at the time. The doctor indicated Plaintiff was not capable of performing any type of work on a reasonably continuous and sustained basis due "severe anxiety & panic attacks, bipolar spectrum, chronic neck pain, fibroymyalgia [and] chronic knee pain." (AR at p. 898).

This appears to be the full extent of the medical records attributable to Dr. Lynn. The ALJ assigned "little weight" to the assessments of Dr. Lynn because she did not cite to any objective information, her findings were inconsistent with objective evaluations, and she was the only physician who indicated Plaintiff could not perform at a "light" exertional level." (AR at p. 33). It is accurate that Dr. Lynn did not cite to any objective information and her findings were inconsistent with

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

objective evaluations as discussed by the ALJ in her decision (AR at pp. 30 and 31), and as discussed by Dr. Lorber during his testimony at the hearing (AR at pp. 74-82). Dr. Lorber offered opinions about Plaintiff's exertional and physical non-exertional limitations which provided the basis for the ALJ's physical RFC determination. (AR at pp. 82-86).[1] The ALJ offered "specific and legitimate" reasons to give "little weight" to the functional assessments of Dr. Lynn and those reasons are supported by "substantial evidence" in the record, including the opinion of Dr. Lorber.

As noted above, Dr. Lynn thought Plaintiff's mental impairments presented the greatest barrier to Plaintiff's ability to keep and obtain a job. On August 26, 2014, John Arnold, Ph.D., completed a Psychological/Psychiatric Evaluation for DSHS. Dr. Arnold performed a "Semi-Structured Clinical Interview," a MSE (Mental Status Examination), and administered the Rey 15-Item Memory Test. (AR at p. 526). While he noted that Plaintiff had received outpatient treatment in New York State for depression and PTSD (Post-Traumatic Stress Disorder) and was taking certain psychiatric medications (Cymbalta, Xanax, Clonazepam, etc.), there is no indication Dr. Arnold reviewed any mental health records from New York or anywhere else. (AR at p. 526). Dr. Arnold's clinical findings were that Plaintiff had a depressed mood and an anxious mood. (AR at p. 527). He diagnosed the Plaintiff with "PTSD, Delayed Onset, Chronic," "Major Depression, Recurrent, Severe w/psychotic features," and "R/O [Rule Out] Somatoform Disorder" with an onset date of December 31, 1983. (AR at p. 527). He indicated that Plaintiff had a number of

---

[1] As the ALJ pointed out, although Plaintiff complained of bilateral hand/wrist pain, electromyography (EMG) testing was unremarkable (AR at p. 26). Dr. Lorber testified there was no evidence of ongoing carpal tunnel syndrome or residuals (AR at p. 74), and indicated there was no restriction on fine manipulation or handling. (AR at p. 86).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

"marked" limitations and a "severe" limitation in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. (AR at p. 528). A "severe" limitation means the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop. (AR at p. 528).

Phyllis Sanchez, Ph.D., reviewed the medical evidence for DSHS and concurred with Dr. Arnold's assessment and the limitations opined by him. (AR at pp. 531-33; 535).[2]

The ALJ concluded the mild to moderate limitations opined by Dr. Arnold were consistent with the record, but "the marked to severe limitations are not given much weight since other evidence in the record does not support them and the mental status examination showed some deficits but not to this degree" and "[p]resumably, Dr. Arnold relied heavily on [Plaintiff's] subjective reporting, as he did not provide objective information to support these significant limitations." (AR at p. 33). As noted above, there is nothing in the record indicating Dr. Arnold relied on anything other than his one time encounter with Plaintiff. And it is true that his mental status examination did not reveal any serious deficits other than a depressed/anxious mood. (AR at pp. 529-30).

Dr. Arnold made no mention of reviewing the psychological evaluation conducted by Jennifer J. Schnitzer, Ph.D., in North Carolina in December 2013. Dr. Schnitzer noted that Plaintiff "has a historical ability to conform to social standards, comply with rules, cooperate with authority figures and interact with her peers in an

---

[2] Although a Ph.D., and not an M.D. or a D.O., Dr. Sanchez also concurred with the assessment of Dr. Lynn and the physical limitations opined by her. (AR at pp. 534 and 536).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

appropriate manner." (AR at p. 503). Plaintiff told Dr. Schnitzer she had psychiatric care roughly six months ago after being robbed at gunpoint in New York and had been prescribed Cymbalta and Xanax. (AR at p. 503). Dr. Schnitzer's mental status examination of the Plaintiff was unremarkable. (AR at pp. 503-04). Dr. Schnitzer diagnosed the Plaintiff with PTSD and offered the following conclusion:

> Regarding the claimant's mental ability to perform the following work activities, she is capable of following, understanding, and retaining simple directions and instructions. She can sustain attention to perform simple repetitive tasks. She can relate appropriately with others to include fellow workers and supervisors. The claimant can appropriately tolerate the stress and pressures associated with day-to-day work activity.

(AR at p. 504).

The ALJ assigned "great weight" to Dr. Schnitzer's assessment, finding that the limitation to simple, repetitive tasks was consistent with the record. (AR at p. 32). The ALJ, however, included more extensive social restrictions based on the testimony of Dr. Moore at the hearing. Based on her review of the record, Dr. Moore testified she saw no evidence of limitation in Plaintiff's ability to perform daily living activities and noted that Plaintiff lived independently. (AR at p. 61). Dr. Moore testified she thought the most significant functional problem for the Plaintiff was anxiety because of Plaintiff's "histrionic style of reporting in the impulsive moving in and out of relationships [and] difficulties with her family." (AR at p. 61). The doctor opined that Plaintiff had moderate to marked social limitations. (AR at p. 61). Dr. Moore summed up Plaintiff's mental limitations as follows:

> I don't think she would have difficulties understanding, remembering or carrying out very simple instructions. I think that should not be a problem. She can probably handle somewhat more complex instructions and work-like tasks as well. I think her problems are in the social domain. I would not expect her to work with the general public, so no public contact. I would not expect her to work in a team-work kind of placement with coworkers . . . .

(AR at p. 62).

The ALJ assigned "great weight" to Dr. Moore's opinion and adopted that

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

opinion as Plaintiff's mental RFC. (AR at p. 34). This was appropriate as Dr. Moore's opinion is supported by, and consistent with, other evidence in the record and the ALJ offered "specific and legitimate" reasons for discounting Dr. Arnold's assessment of Plaintiff's limitations, particularly so in light of the assessments provided by Dr. Schnitzer and Dr. Moore.[3]

**SYMPTOM TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony

---

[3] The ALJ noted that Dr. Arnold's DSHS evaluation was "conducted for a purpose separate and distinct from Social Security Administration disability determinations." (AR at p. 33). The court does not consider this to be a "specific and legitimate" reason for discounting Dr. Arnold's opinion. Nonetheless, the other reasons offered by the ALJ for discounting Dr. Arnold's opinion are "specific and legitimate."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found the Plaintiff's subjective complaints were not reasonably consistent with the medical evidence (AR at p. 30) and the Plaintiff "can perform a full range of daily activities, which is inconsistent with the nature, severity and subjective complaints of the claimant." (AR at p. 31). In his decision, the ALJ detailed the unremarkable physical examination findings regarding Plaintiff and the conservative treatment provided to her. (AR at pp. 30 and 31). Dr. Lorber reviewed these things in arriving at his opinion regarding Plaintiff's physical RFC which was adopted by the ALJ.

With regard to Plaintiff's mental impairments, the ALJ detailed the Plaintiff's unremarkable mental status examinations and noted the various activities engaged in by the Plaintiff (AR at p. 31), including traveling to New York and back (January 2015, AR at p. 737)), and her going back to college to get a GED and then planning on taking college courses (April 2015, AR at p. 617). As discussed above, Dr. Moore saw no evidence of limitation in Plaintiff's ability to perform daily living activities and noted that Plaintiff lived independently.

The ALJ offered clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony regarding the severity of her symptoms and her asserted limitations.

**LAY WITNESS STATEMENT**

Plaintiff's friend, Manal Alhussin, completed a Third Party Function Report

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

on the Plaintiff's behalf, dated September 12, 2013. Alhussin indicated he had known Plaintiff for 10 years. He described what he had observed of Plaintiff's abilities when she lived in New York. (AR at pp. 415-422).

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be considered by an ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ gave partial weight to Alhussin's assessment, finding that although the record supported some of the limitations he opined regarding Plaintiff's impairments, those limitations were "not at the disabling level and Albussin's opinion is not consistent with the totality of the record evidence." (AR at pp. 34-35). To the extent Alhussin's statement is in fact inconsistent with the medical opinions discussed above regarding Plaintiff's exertional and non-exertional limitations, this inconsistency constitutes a specific and "germane" reason to discount Albussin's statement.

**STEP FIVE ANALYSIS**

Because the ALJ properly discounted the opinions of Drs. Lynn and Arnold, and properly discounted the symptoms and limitations testimony of Plaintiff, his RFC determination is supported by substantial evidence. This RFC was presented to the VE in hypothetical questioning and the VE opined there were jobs existing in significant numbers in the national economy which Plaintiff is capable of performing. (AR at pp. 122-26). The ALJ did not commit any error at step five because all of the limitations supported by substantial evidence were included in his questioning of the VE.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 15**

## CONCLUSION

The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports his decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record. The file shall be **CLOSED**.

**DATED** this 25th day of June, 2018.

*s/ Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 16**